UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 1:26-cr-4-TRM-CHS |
| v. | ) | |
| | ) | JUDGE McDonough / Steger |
| JONATHAN D. FROST | ) | |

**PLEA AGREEMENT**

The United States of America, by the United States Attorney for the Eastern District of
Tennessee, and the defendant, Jonathan D. Frost, and the defendant's attorney, Lee Davis, have
agreed upon the following:

1.     The defendant will waive indictment and arraignment and plead guilty to an
information charging the defendant with the following offenses:

a)     Count One.  Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C.
§ 1349.

The punishment for this offense is as follows:  Imprisonment for a term not to exceed 20
years, a fine of up to $250,000, a period of supervised release of up to 3 years, a special assessment
of $100, forfeiture, and restitution.

b)     Count Two.  Conspiracy to Commit Money Laundering, in violation of 18
U.S.C. 1956(h).

The punishment for this offense is as follows:  Imprisonment for a term not to exceed
20 years, a fine of up to the greater of $500,000 or twice the value of the property involved in the
money laundering transactions, a period of supervised release of up to 3 years, a special assessment
of $100, forfeiture, and restitution.

c)    Count Three.  Conspiracy to Defraud the United States, in violation of 18 U.S.C. § 371.

The punishment for this offense is as follows:  Imprisonment for a term not to exceed 5 years, a fine of up to $100,000, a period of supervised release of up to 3 years, a special assessment of $100, restitution, and payment of the costs of prosecution.

2.    The defendant has read the information, discussed the charges and possible defenses with defense counsel, and understands the crimes charged.  Specifically, the elements of the offenses are as follows:

### a) Conspiracy to Commit Wire Fraud – 18 U.S.C. § 1349

(1)    Two or more persons conspired, or agreed, to commit the crime of wire fraud; and

(2)    The defendant knowingly and voluntarily joined the conspiracy.

Wire Fraud - 18 U.S.C. § 1343

(1)    The defendant knowingly devised or participated in a scheme to defraud in order to deprive another of money or property;

(2)    The scheme included a material misrepresentation or concealment of a material fact;

(3)    The defendant had the intent to defraud; and

(4)    The defendant used wire, radio, or television communications, or caused another person to use wire, radio, or television communications, in interstate commerce in furtherance of the scheme.

### b) Conspiracy to Commit Money Laundering – 18 U.S.C. § 1956(h)

(1)    Two or more persons conspired, or agreed, to commit the crime of money laundering; and

(2)    The defendant knowingly and voluntarily joined the conspiracy.

Promotion Money Laundering – 18 U.S.C. § 1956(a)(1)(A)(i)

2

(1) The defendant conducted a financial transaction;

(2) The financial transaction involved property that represented the proceeds of a specified unlawful activity;

(3) The defendant knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity; and

(4) The defendant had the intent to promote the carrying on of a specified unlawful activity.

Concealment Money Laundering – 18 U.S.C. § 1956(a)(1)(B)

(1) The defendant conducted a financial transaction;

(2) The financial transaction involved property that represented the proceeds of a specified unlawful activity;

(3) The defendant knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity; and

(4) The defendant knew that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of a specified unlawful activity.

Money Laundering by Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity – 18 U.S.C. § 1957

(1) The defendant knowingly engaged in a monetary transaction;

(2) The monetary transaction was in property derived from a specified unlawful activity;

(3) The property had a value greater than $10,000;

(4) The defendant knew that the transaction was in criminally derived property;

(5) The monetary transaction took place within the United States.

3

**c) Conspiracy to Defraud the United States – 18 U.S.C. § 371**

    (1) Two or more persons conspired, or agreed, to commit the crime of tax fraud and false statements, in violation of 26 U.S.C. § 7206(2);

    (2) The defendant knowingly and voluntarily joined the conspiracy;

    (3) A member of the conspiracy did one of the overt acts described in the information for the purpose of advancing or helping the conspiracy; and

    (4) The defendant participated in the conspiracy.

Tax Fraud and False Statements – 26 U.S.C. § 7206(2)

    (1) The defendant aided or assisted in, or procured, counseled, or advised the preparation or presentation of a return, affidavit, claim, or other document which involved a matter arising under the Internal Revenue laws;

    (2) The return, affidavit, claim, or other document was fraudulent or false as to a material matter: and

    (3) The defendant acted with willfulness.

3.    In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

At all times relevant to this matter, J.D. Frost was a certified public accountant in Chattanooga, Tennessee. In 2019, he formed an informal joint venture with co-conspirator ▮▮▮▮ ▮▮▮▮ ("Co-Conspirator 1") to begin preparing tax returns for clients. On June 1, 2020, Frost and Co-Conspirator 1 entered into a formal joint venture through which they began soliciting investments from individuals and entities for the stated purpose of building and operating a facility that would use solar power to extract hydrogen gas from water (the "Hydrogen Plant"). Frost, Co-

4

Conspirator 1, and ▓▓▓▓▓▓▓▓▓ ("Co-Conspirator 2"), created and orchestrated a scheme that would use wire communications in interstate commerce, such as email, text messaging, and telephone calls, for the purpose of intentionally making materially false statements to investors that the funds provided would be used for the purpose of constructing a Hydrogen Plant. Funds contributed by investors, however, were not used for building a Hydrogen Plant but were, instead, converted to the personal use of Frost and his co-conspirators and for expenditures wholly unrelated to the construction of a Hydrogen Plant.

To promote the Hydrogen Plant scheme and to conceal its fraudulent nature, Frost and his co-conspirators intentionally engaged in financial transactions involving the investors' funds, while knowing that such funds were the proceeds of wire fraud. Investor funds, obtained through wire fraud and that the co-conspirators knew to be criminally derived, were transferred to bank accounts for use in paying employees at Frost's accounting firm in Chattanooga, which was used for identifying investors in the wire fraud scheme. Investor funds, obtained through wire fraud and that the co-conspirators knew to be criminally derived, were also used in financial transactions to pay the principal and exorbitant interest fees on loans that Frost and his co-conspirators obtained from "hard money lenders" in order to maintain the liquidity of business entities that Frost and his co-conspirators used to operated their fraud scheme. In addition, the co-conspirators engaged in financial transactions of greater than $10,000 in value with proceeds of wire fraud, which the co-conspirators knew to be criminally derived. All such transactions occurred within the United States.

In addition to the foregoing offenses, Frost and Co-Conspirator 1 knowingly agreed to defraud the United States, and thereby willfully obstructing the lawful government function of the Internal Revenue Service to compute, assess, and collect income taxes, through willfully preparing and filing materially false tax returns by including in taxpayers' tax returns various materially false

5

deductions and exemptions, to which Frost and Co-Conspirator 1 knew the taxpayers were not lawfully entitled. For example, between approximately April 19, 2021 and August 2, 2021, Frost willfully transmitted to the Internal Revenue Service Forms 1065, Forms 1040X, and a Form 1040, for tax years 2018 through 2020, for an individual whose identity is known and whose initials are "K.S.," which forms falsely reported partnership gross receipts and business losses in a manner that resulted in tax losses to the United States of approximately $20,205 for the 2018, 2019, and 2020 tax years, collectively. Frost and Co-Conspirator 1's conspiracy to defraud the United States resulted in a tax loss of approximately $8,143,043.27 to the United States.

These events occurred in the Eastern District of Tennessee and elsewhere.

4. The defendant is pleading guilty because the defendant is in fact guilty. The defendant understands that, by pleading guilty, the defendant is giving up several rights, including:

a) the right to be indicted by a grand jury for these crimes;

b) the right to plead not guilty;

c) the right to a speedy and public trial by jury;

d) the right to assistance of counsel at trial;

e) the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

f) the right to confront and cross-examine witnesses against the defendant;

g) the right to testify on one's own behalf, to present evidence in opposition to the charges, and to compel the attendance of witnesses; and

h) the right not to testify and to have that choice not used against the defendant.

5. The parties agree that the appropriate disposition of this case would be the following as to each count:

6

a)      The Court may impose any lawful terms of imprisonment, any lawful fines, and any lawful terms of supervised release up to the statutory maximums;

b)      The Court will impose special assessment fees as required by law; and

c)      The Court may order forfeiture as applicable and restitution as appropriate. No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding any potential sentence in this case are not binding on the Court and may not be used as a basis to rescind this plea agreement or withdraw the defendant's guilty pleas. The defendant understands that the sentence in this case will be determined by the Court after it receives the presentence investigation report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

6.      If the Court orders the defendant to pay restitution to the IRS for the failure to pay tax, either directly as part of the sentence or as a condition of supervised release, the IRS will use the restitution order as the basis for a civil assessment. *See* 26 U.S.C. § 6201(a)(4). The defendant does not have the right to challenge the amount of this assessment. *See* 26 U.S.C. § 6201(a)(4)(C). Neither the existence of a restitution payment schedule nor the defendant's timely payment of restitution according to that schedule will preclude the IRS from administrative collection of the restitution-based assessment, including levy and distraint under 26 U.S.C. § 6331.

7.      Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the

7

Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the defendant is awarded the two-level reduction pursuant to Section 3E1.1(a), the United States agrees to move, at or before the time of sentencing, the Court to decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for the defendant's offenses, including violations of conditions of release or the commission of any additional offenses prior to sentencing, the United States will be free to decline to make such motion, to withdraw that motion if already made, and to recommend to the Court that the defendant not receive any reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

8.      The defendant agrees to pay the special assessment in this case prior to sentencing.

9.      Unless otherwise limited by an agreed preliminary order of forfeiture, the defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, which are in the possession or control of the defendant or the defendant's nominees constituting any property, real or personal, constituting or traceable to the proceeds of any violation of 18 U.S.C. § 1349 and any property, real or personal, involved in a violation of 18 U.S.C. § 1956(f), including, without limitation, a personal money judgment against the defendant and in favor of the United States of an amount not less than $70,000,000.

The defendant further agrees to assist the United States fully in the identification, recovery, and return to the United States of any other assets or portions thereof subject to forfeiture. The defendant further agrees to make a full and complete disclosure of all assets over which the defendant exercises control and those which are held or controlled by a nominee. The defendant agrees to forfeit all interests in the properties as described above and to take whatever steps are

8

necessary to pass clear title to the United States. These steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and the signing of any other documents necessary to effectuate such transfers. The defendant agrees not to object to any civil or criminal forfeiture brought against these properties. The defendant agrees to take all such steps to locate such property and to pass title to the United States before the defendant's sentencing.

In the event a money judgment forfeiture is ordered, the defendant agrees to send all money judgment payments to the United States Marshals Service. The defendant also agrees that the full money judgment amount shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody, the defendant agrees that the Bureau of Prisons will have the authority to establish payment schedules to ensure payment of the money judgment. The defendant further agrees to cooperate fully in efforts to collect on the money judgment by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of the money judgment without notifying defendant's counsel and outside the presence of the defendant's counsel.

10.    The defendant agrees that the Court shall order restitution, pursuant to any applicable provision of law, for any loss caused to: (1) the victims of any offense charged in this case (including dismissed counts); and (2) the victims of any criminal activity that was part of the same course of conduct or common scheme or plan as the defendant's *charged* offenses.

11.    Financial Obligations. The defendant agrees to pay all fines and/or restitution to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amounts shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant

9

agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel. In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

      a)    If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

      b)    The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

      c)    If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's Office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

    12.    The defendant voluntarily, knowingly, and intentionally agrees to the following:

10

a)      The defendant will not file a direct appeal of the defendant's convictions or sentence with one exception: The defendant retains the right to appeal a sentence imposed above the sentencing guideline range determined by the Court or above any mandatory minimum sentence deemed applicable by the Court, whichever is greater. The defendant also waives the right to appeal the Court's determination as to whether the defendant's sentence will be consecutive or partially concurrent to any other sentence.

b)      The defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's convictions or sentence, with two exceptions: The defendant retains the right to file a § 2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel.

c)      The defendant will not, whether directly or by a representative, request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. Section 552, or the Privacy Act of 1974, 5 U.S.C. Section 552a.

13.      The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offenses to which the defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including his attorney or the Court, can predict to a certainty the effect of the defendant's conviction on immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any

11

immigration consequences the plea may entail, even if the consequence is automatic removal from the United States.

14.     The terms of this agreement are conditioned upon approval by the Department of Justice, Criminal Division, Tax Section. This agreement does not become enforceable against the United States until approval is provided by the Department of Justice, Criminal Division, Tax Section. In the event such approval is not granted, this agreement shall be void.

15.     This plea agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this plea agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this plea agreement in any way (including but not limited to failing to enter guilty pleas as agreed herein, moving to withdraw guilty pleas after entry, or by violating any court order or any local, state or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or speedy trial or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty pleas in this case.

16.     The United States will file a supplement in this case, as required in every case by the Local Rules of the United States District Court for the Eastern District of Tennessee, even though

12

there may or may not be any additional terms.  If additional terms are included in the supplement,

they are hereby fully incorporated herein.

*(The remainder of this page is blank.)*

17.     This plea agreement and supplement constitute the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charges, and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States.  The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

FRANCIS HAMILTON III
UNITED STATES ATTORNEY

Date  1/27/2026

By:  _____
Frank M. Dale, Jr.
Assistant United States Attorney

Date  01/23/2026

_____
Jonathan D. Frost
Defendant

Date  1/23/2026

_____
Lee Davis
Attorney for the Defendant

14